IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RYAN T. TAULBEE,

    Petitioner,

v.

RHONDA R. RICHARD, WARDEN,

    Respondent.

CASE NO. 2:16-CV-511
JUDGE ALGENON L. MARBLEY
Magistrate Judge Elizabeth P. Deavers

ORDER and
REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition*, Respondent's *Return of Writ*, Petitioner's *Reply* and *Addendum to Reply*, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

Petitioner's *Motion to Compel Discovery and/or Expand the Record* (ECF No. 16) is **DENIED AS MOOT.** As the record reflects, Respondent has filed a supplemental response including the attached portions of the trial transcript requested by the Petitioner. (ECF No. 18.)

**Facts and Procedural History**

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> Appellant and K.S., the victim herein, began dating in February of 2013. On the evening of September 27, 2013, Appellant and K.S. went out with a friend and were drinking. They returned to K.S.'s apartment at 6:00 a.m. on September 28, 2013. K.S.'s apartment is on the second floor of a two-story building. K.S. admits to having consumed approximately seven or eight drinks over a twelve hour span on the evening in question.

K.S. testified upon returning to the apartment, Appellant found messages on K.S.'s phone from another male whom she had been seeing. He became angry and poured a drink over her head. She stood up abruptly, accidentally hitting Appellant with her elbow. Appellant then punched K.S. in the cheek and slapped her twice. Appellant then took K.S.'s phone and went downstairs.

After Appellant left the apartment, K.S. removed her wet shirt. Appellant then returned to the apartment with handcuffs. He grabbed K.S.'s wrists and put them into the handcuffs. He told K.S. to take off the rest of her clothes, and she complied. Appellant threw K.S. onto the bed, got on top of her and forced his penis into her mouth. Appellant then told K.S. to get on top, and he grabbed her hair and forced her head onto his penis.

K.S. testified Appellant hit her on the head when she did not perform fellatio exactly how he expected. He called her names, and pushed her legs apart in order to penetrate her vaginally with his penis.

Appellant then put his fingers into K.S.'s vagina several times, cutting her vagina with his fingernails causing her to bleed onto her bed sheets. At the same time, he put one finger into her anus in a harsh manner. Appellant begged Appellant not to put his fingers into her vagina and anus. Immediately thereafter, Appellant got on top of K.S. and penetrated her with his penis vaginally.

Appellant then removed the handcuff from K.S.'s right wrist and secured the same to her left ankle. He told her to clean herself, and she told him she could not because she was handcuffed. He then threw a hand towel at her and ordered her to clean herself. She complied. Afterward, Appellant stuffed the washcloth down her throat, causing her to choke on the washcloth.

Appellant took K.S. to the kitchen and got something to eat. He then returned to the bedroom, but unable to get an erection, forced his penis into her anus. K.S. attempted to move away from Appellant and to push him away.

Appellant put a pillow over K.S.'s face and pushed down. He also choked her on two occasions. Appellant used a bungee cord to drag K.S. throughout the apartment. K.S. testified she felt she did not have any choice but to perform the sexual acts with Appellant. Appellant carried on the encounter for approximately nine hours.

> When Appellant grew tired, he removed the handcuffs, and lay down on the bed. He then fell asleep. K.S. then dressed, and escaped from the apartment, fleeing to a neighbor's residence, and calling emergency services.
>
> Appellant maintains he engaged in consensual sexual activity with K.S. on the evening in question.
>
> On October 4, 2013, Appellant was indicted on six felony counts: Count One, Rape, in violation of R.C. 2907.02(A)(2), by fellatio; Count Two, Rape, in violation of R.C. 2907.02(A)(2), by digital anal penetration; Count Three, Rape, in violation of R.C. 2907.02(A)(2), by digital vaginal penetration; Count 4, Attempted Rape, in violation of R.C. 2923.02(A) and R.C. 2907.02(A)(2), by attempted penile anal penetration; Count Five, Kidnapping, in violation of R.C. 2905.01(A)(3); and Count Six, Disrupting Public Services, in violation of R.C. 2909.04(A)(3).
>
> The matter proceeded to a jury trial. Appellant was found not guilty of all but one count contained in the indictment. The jury found Appellant guilty of Count Three, Rape, in violation of R.C. 2907.02(A)(2), by digital penetration. Appellant moved the trial court to set aside the verdict as contrary to the balance of the jury's findings. The trial court denied the motion.
>
> The trial court imposed a sentence of nine years in prison.
>
> Appellant appeals, assigning as error:
>
> "I. THE CONVICTION OF THE DEFENDANT–APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AND CANNOT BE RECONCILED WITH THE OTHER VERDICTS IN THE CASE."

*State v. Taulbee*, No. 14-CA-5, 2015 WL 1255761, at *1-2 (Ohio App. 5th Dist. March 13, 2015). On March 13, 2015, the appellate court affirmed the judgment of the trial court. *Id*. Petitioner did not file a timely appeal with the Ohio Supreme Court. On July 13, 2015, he filed a motion for a delayed appeal. (ECF No. 10-1, PageID# 212.) On September 16, 2015, the Ohio Supreme Court denied his motion for a delayed appeal. *State v. Taulbee*, 143 Ohio St.3d 1463 (Ohio 2015).

> On July 6, 2015, appellant filed a Motion to Reopen his appeal. The motion was denied as untimely on September 10, 2015. Appellant filed a Notice of Appeal with the Ohio Supreme Court on November 30, 2015.
>
> Appellant, on February 5, 2016, filed a Motion to Vacate a Void Sentence in the trial court, arguing that the trial court erred when it imposed a community control sanction (the no contact order) and a prison term for the same felony offense and that the trial court relied on erroneous information when sentencing appellant. Appellant specifically argued that the trial court "relied upon erroneous information and testimony from the 'victim's' account that the jury deemed wholly incredible." Appellee filed a response to appellant's motion on February 23, 2016, conceding, in part, that the no contact order should be vacated.
>
> On February 10, 2016, the Ohio Supreme Court declined to accept jurisdiction of appellant's appeal.
>
> The trial court, as memorialized in a Journal Entry filed on March 4, 2016, overruled appellant's Motion to Vacate a Void Sentence, but ordered that the no contact order be vacated.
>
> Appellant now appeals from the trial court's March 4, 2016 Journal Entry, raising the following the following assignments of error on appeal:
>
> TRIAL COURT ERRED AS A MATTER OF FACT AND LAW WHEN IT IMPOSED A SENTENCE THAT WAS CONTRARY TO LAW.
>
> TRIAL COURT ERRED AS A MATTER OF FACT AND LAW WHEN IT SENTENCED APPELLANT RELYING ON ERRONEOUS INFORMATION.

*State v. Taulbee*, No. 16-CA-10, 2016 WL 4418494, at \*1-2 (Ohio App. 5th Dist. Aug. 17, 2016). On August 17, 2016, the appellate court affirmed the judgment of the trial court, holding that Petitioner's claim was barred under Ohio's doctrine of *res judicata*. *Id*. On March 15, 2017, the Ohio Supreme Court dismissed the appeal. *State v. Taulbee*, 148 Ohio St.3d 1426 (Ohio 2017).

4

On June 9, 2016, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that he was denied the effective assistance of appellate counsel (claim one); that he was denied the effective assistance of trial counsel (claims two and three); and that he was denied a fair trial based on cumulative error (claim four). It is the position of the Respondent that all of Petitioner's claims are procedurally defaulted and without merit.

## Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts

5

before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal-law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards,* 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no

7

> longer available. *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id*., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

Turning first to claim four, Petitioner asserts that he was denied a fair trial based on cumulative error. However, he may now no longer present this claim to the Ohio courts by operation of Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce the procedural rule due to the nature of Petitioner's procedural default.

Moreover, Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman,* 501 U.S. at 732–33.

To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964). The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006*); Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).

Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief. Petitioner has procedurally defaulted claim four by failing to raise it on direct appeal.

Moreover, as noted by the Respondent "the law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (citing *Moore v. Parker*, 425 F.3d 250,

256 (6th Cir. 2005.") This Court is bound by that ruling. *See id.*; *Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004) (citing *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) (same).

In claims two and three, Petitioner asserts that he was denied the effective assistance of trial counsel. Because he was represented by the same attorney at trial and on direct appeal, such a claim would properly be raised in a petition for post-conviction relief pursuant to O.R.C. § 2953.21. *See Cowans v. Bagley*, 236 F. Supp. 2d 841, 855 (S.D. Ohio 2002) (citing *State v. Cole*, 2 Ohio St.3d 112 (1982)). "Issues which must be raised in a postconviction action pursuant to R.C. § 2953.21 include claims . . . of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial." *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001) (citing *State v. Cole*, 2 Ohio St.3d at 112). Petitioner, however, failed to present any claim regarding the denial of the effective assistance of trial counsel in a petition for post-conviction relief pursuant to O.R.C. § 2953.21. Further, the time period for doing so has now long since expired, and the record fails to reflect that Petitioner can meet the stringent requirements for the filing of a successive or untimely post-conviction petition pursuant to O.R.C. § 2953.23.

The Court concludes, therefore, that Petitioner has waived claims two, three and four for federal habeas corpus review. Petitioner may still secure review these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.

2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to do so here.

Finally, as to claim one, Petitioner asserts that he was denied the effective assistance of appellate counsel. As discussed, such a claim may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted. *Edwards*, 529 U.S. at 451-52. Here, however, Petitioner has likewise procedurally defaulted his claim of ineffective assistance of appellate counsel. The state appellate court explicitly denied Petitioner's delayed Rule 26(B) application for failure to demonstrate good cause for the untimely filing of the application more than ninety days after journalization of the appellate judgment. *Judgment Entry* (ECF No. 10-1, PageID# 254-55.) Consequently, the first and second parts of *Maupin* test have been met with respect to this claim. Further, the Sixth Circuit has recognized that the timeliness requirement of Ohio Appellate Rule 26(B) is an adequate and independent state ground for relief. *Fautenberry v. Mitchell*, 515 F.3d 614 (6th Cir. 2008).

In short, Petitioner has waived all of the claims he now presents for review in these proceedings.

The United States Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496. In *Schlup,* the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching

the merits of an otherwise procedurally-barred habeas petition. *Schlup*, 513 U.S. at 317. However, the actual innocence claim is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). The Court of Appeals for the Sixth Circuit explained the exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter,* 395 F.3d at 589–90 (footnote omitted). Petitioner does not meet these standards here. After an independent review of the record, the Court does not deem this to be so extraordinary a case as to relieve Petitioner of his procedural default.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

*s/ Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge

Dated: May 3, 2017